# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARKEL AMERICAN INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Judge Joan B. Gottschall<br>) |
| RYAN DOLAN and REGIONS BANK, | ) Case No. 09 C 4431<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

Plaintiff Markel American Insurance Company ("Markel") brings this action for a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.*, against Defendants Ryan Dolan and Regions Bank ("Regions"), seeking a declaration that Markel owes no coverage to either defendant under the marine insurance policy it issued to Dolan with respect to the alleged theft of a high-performance cigarette boat. Markel invokes the court's admiralty and maritime jurisdiction, pursuant to Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333. Now before the court is Markel's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Because Dolan made a material misrepresentation in his application for the policy that renders the policy void in its entirety, the court grants the motion.

### I. BACKGROUND

The following facts are undisputed, except as otherwise indicated. In Spring 2006, Dolan and a man he knew as "Rick Dugo" discussed a commercial venture

involving the purchase of a boat. Dugo owned a cigarette boat and had been an avid boater for many years. Dolan had little to no experience in owning or operating any kind of vessel, although he had operated his sister's boat on one occasion. Dolan and Dugo agreed that, although a vessel that Dugo owned would be used as part of the purchase transaction, Dugo would not have any formal ownership interest in the new boat. Dolan's understanding was that at some point in the future, Dugo would either purchase the boat from Dolan, or the boat would be sold at a profit.

On or about July 17, 2006, Dugo and Dolan purchased a 2004 46-foot Cigarette Rough Rider high performance power vessel for $491,162.50, including Florida state sales tax, license and registration fees.[1] Dugo acquired the boat in Florida and provided Dolan with an Agreement of Sale, which Dolan mailed back to Hideaway Marina in Pompano Beach, Florida. Dugo contributed a $75,000.00 cash down payment toward the purchase of the boat. The remainder of the purchase price was to be financed, and Dugo was to be responsible for the monthly payments. Dolan was the boat's title owner.

On July 13, 2006, Dolan signed a Preferred Ship Mortgage offered by Regions. On the mortgage agreement, the name "Total Confusion" was scratched out and "Dugo" entered as the name of the vessel. Similarly, the name "Total Confusion" was scratched out and replaced with "Dugo" on other documents dated July 13, 2006, which Dolan executed in connection with the purchase of the boat: a "Limited Power of Attorney," a "Release & Authorization," an "Affidavit for Exemption of Boat Sold for Removal from the State of Florida by a Nonresident Purchaser," and an "Application for Initial Issue, Exchange, or Replacement of Certificate of Documentation; Redocumentation."

---

[1] Defendants dispute that Dugo made the purchase. They cite to Dolan's deposition, which states that he and Dugo made the purchase, and that Dugo acquired the boat in Florida and brought it back to Chicago. The court finds that the undisputed facts show that Dugo was involved in the purchase.

Dugo transported the boat from Florida to Chicago, where it was stored at Montrose Harbor Marina, where Dugo was a member. On one occasion, Dugo allowed Dolan to operate the vessel for "a few minutes." Dolan was never given a key to the vessel and never had any affiliation with the marina. Markel claims that Dugo was in possession of the vessel at all relevant times and that Dolan never had possession of the vessel. Dolan disputes this, pointing to his deposition testimony that states that the boat was stored at the home of someone named "Felix" who was a friend of Dugo's, and that Dolan operated the boat once for a few minutes when he went out on the boat with Dugo. (Pl.'s Rule 56.1 Statement of Facts ("SOF") Ex. B (Dolan Dep.) 60:13, 67:23, 69:20, ECF 100-2.)

In order to obtain insurance coverage on the boat, Dugo contacted Sea to Sea Insurance Services, Inc. ("Sea to Sea"), an underwriting agent for Markel with regard to Markel's High Performance Boat Program. A complete and signed Yacht & High Performance Insurance Application and Resume of Boating Experience ("the 2006 application") was faxed to Sea to Sea July 11, 2006. Dolan played no role in filling out the 2006 application and never saw it. Although his name is signed to the application, the signature is not his. Dolan provided Dugo with personal information such as his parent's address, his Social Security number, and his driver's license number, all of which appear on the 2006 application. Dolan received the insurance documents for the ensuing policy at his parents' residence in Aurora, Illinois. The policy had an inception date of July 11, 2006, and named Dolan as the insured and Regions as a lienholder.

Markel claims that the information which appears on the 2006 application is false. The application states that the operator, Dolan, has eleven years of prior boating

experience and six years of boat ownership, and has owned three prior boats. (Pl.'s Rule 56.1 SOF Ex. H (2006 Application), ECF 100-8.) Dolan stated in his deposition that he had never previously owned a vessel, and that any information on the application regarding prior ownership of vessels by him was incorrect. (Dolan Dep. 94:9-19.) Dolan responds by citing his affidavit, which states that he never saw the 2006 application before this litigation, that the failure to disclose Dugo as an operator on the application was an "inadvertent oversight," and that Dugo was the operator of the boat. (Defs.' Resp. to Mot. for Summ. J. Ex. B (Dolan Aff.) ¶¶ 6, 9, ECF No. 89-2.)

During the year after the boat was purchased, Dugo contributed approximately $8,000.00 toward mortgage payments. The insurance policy on the boat was renewed for July 11, 2007, through July 11, 2008, without the requirement of the submission of a new application. Dolan then received a "Lapse Notice" from Markel dated July 17, 2008. Dugo had yet to buy the vessel from Dolan, and Dolan concluded that he needed to obtain insurance coverage. Dolan knew that the mortgage from Regions required that insurance be in place on the vessel. Dolan spoke to Kurtis Limbo, an agent at Sea to Sea, about purchasing a new insurance policy. Mr. Limbo told Dolan that he would need to complete a new application in order to receive a new policy from Markel. Dolan received a "Rate Indication" quote dated August 19, 2008, along with a partially completed Watercraft Insurance Application. Sea to Sea had filled in several parts of the insurance application and had typed "Ryan Dolan" in the space for the primary operator's name. Sea to Sea asked Dolan to complete the remainder of the application.

On September 23, 2008, Dolan received an email from Sea to Sea asking whether he was still interested in "getting the coverage back in place." Dolan responded on

November 14, 2008, by faxing the completed and signed Watercraft Insurance Application ("the 2008 application") back to Sea to Sea. He did not change the information that Sea to Sea had filled in. Some of the handwriting that appears on the completed application is Dolan's, but the handwriting that appears under the heading of "Operator Information" is Dugo's. Dolan gave Dugo the 2008 application to complete and watched as Dugo entered the hand-written information. Dugo listed his qualifications and experience. Dugo did not list himself as the operator of the vessel. The application did not ask for the identity of the person who had possession of the boat.[2] Dolan did not inform Sea to Sea that Dugo was involved in filling out the application.

According to Markel, the 2008 application represents that Dolan previously owned three cigarette boats. In support, Markel points to the application itself, which lists Dolan as the boat's operator and lists under "Operator Information" eight years of boat ownership and three prior boats. (Pl.'s Rule 56.1 SOF Ex. L (2008 Application), ECF 100-12.) Dolan had no prior experience in the ownership or operation of any of the vehicles referenced on the Watercraft Insurance Application.[3] It is Dugo who had the experience referenced on the application that Dolan signed on November 14, 2008. Defendants dispute that the information on the application was false, citing Dolan's affidavit, which states that the information "accurately reflects Dugo's qualifications and operator information." (Dolan Aff. ¶ 11.)

---

[2] Dolan states in his SOF ¶ 18 that he informed Sea to Sea that Dugo would have possession of the boat, but the paragraphs of his deposition testimony cited do not support that assertion.

[3] Dolan disputes that he had no prior experience in the ownership of the boats, but as support he cites only the expert report of Alan Jervis, which states that "any discrepancy was not material" but does not contradict Markel's SOF. (*See* Defs.' Resp. to Mot. for Summ. J. Ex. A (Jervis Report) ¶ 11.)

Markel further claims that Dolan was aware the information was false when he signed the application, pointing to the fact that, when asked at his deposition why he did not reference Dugo as a secondary operator, Dolan stated that he "just filled out [his] portion and [Dugo] filled it in and just sent it, blindly." (Dolan Dep. 138:5-6.) Dolan disputes this assertion, citing his affidavit, which states that he did not sign the application knowing that any of the information was false, that his failure to disclose that Dugo was the operator was an inadvertent oversight, and that no one from Sea to Sea asked him who was going to drive the boat. He claims that he did not know he should change the information regarding the primary operator, that he would have changed the information had Markel or Sea to Sea advised him to do so, and that he gave the application to Dugo to complete and never saw the final contents. (Dolan Aff. ¶¶ 8-11.)

On or about November 14, 2008, Markel issued to Dolan a policy of marine insurance in the amount of $460,000.00 for the boat and $12,000.00 for the trailer. Dolan received the documents for Markel's Policy No. MHP00000014926 at his parent's address in Aurora, Illinois. The Navigation Limits permitted under the policy were "The Great Lakes including the St. Lawrence River, not east of Quebec City, and inland lakes, rivers and tributaries of bordering states." The policy contained the following provisions:

> INSURING AGREEMENT
>
> In return for the premium payment and in compliance with all applicable provisions of this policy and any endorsements, we agree to provide the insurance coverages you have selected as shown on the Declarations Page, which is part of this policy.
>
> By accepting this policy, you agree that the statements on the Declarations Page and any application are your agreements and representations. This policy is issued in reliance upon the truth of your representations during the application process and it includes all agreements existing between you and us or any of our representatives.

*****

GENERAL CONDITIONS

These conditions apply in addition to any condition applicable to a specific coverage or group of cover-ages

*****

3. Misrepresentation or Fraud

All insurance provided by this policy will be null and void if you, at any time, either intentionally conceal or misrepresent any fact, regardless of materiality, or if you misrepresent or conceal any material fact regardless of intent. No action or inaction by us will be deemed a waiver of this provision.

*****

PHYSICAL DAMAGE

1. Coverage

a. Watercraft and Equipment

i. Coverage

We will cover sudden accidental direct physical loss or damage to the insured watercraft.

Regions is a "loss payee" under the policy, which contains the provision:

> If a 'Loss Payee' is named on the Declarations Page, any loss will be paid to you [the insured] and the 'Loss Payee' as your and their interests appear. If your interest in the insured watercraft is terminated, any loss payment will only recognize the 'Loss Payee's' interest. No change in title or ownership of the insured watercraft or any acts of [the insured] will affect the Loss Payee's' interest in this policy except that the 'Loss Payee's' interest will not be protected in the event of fraud, misrepresentation, material omission, or willful or intentional misconduct or criminal act on the part of any insured or during any illegal activity on the part of any insured.

The policy provided coverage for the trailer, covering "sudden accidental direct physical loss or damage," but "only if used exclusively for transporting the insured watercraft." Dolan paid Markel an additional premium for coverage of the trailer.

In November 2008, when the policy was issued, Dolan was behind on his mortgage payments to Regions. Dolan never informed Sea to Sea that he wanted the insurance policy to provide any extra coverage for the benefit of Regions. The application submitted by Dolan on November 15, 2008, makes no request for additional coverage for Regions beyond its status as a lienholder, and Markel charged no additional premium related to coverage for Regions.

Dolan understood that the vessel was being stored on a trailer at the home of a friend of Dugo's named Frank Hollis. Between November 2008 and March 2009, Dugo continued to assure Dolan that he was going to buy the vessel from Dolan or market the vessel for sale at a profit. In March 2009, Dolan stopped speaking to Dugo because of Dugo's failure to either buy the vessel from Dolan or to sell it. In March 2009, Dolan learned that Dugo on occasion used aliases, including the name "Rick Schulte."

In March 2009, Dugo informed Dolan that the boat was missing and that Dugo believed that an individual named Mike Maggio had taken the vessel for "collateral." A week later, Dugo informed Dolan that he believed the vessel had been stolen from the home of Frank Hollis. Dolan hired a private investigator in an effort to locate the stolen boat. Markel also hired an investigator. Markel claims that its investigator determined that the vessel has never been reported or listed as stolen. Dolan testified at deposition that he reported the theft to Regions. (Dolan Dep. 152:1.) In his affidavit, he states that he also reported the boat as stolen to the Chicago Police, the FBI, and the Coast Guard,

and that his private investigator attempted to obtain the Coast Guard's assistance in locating the boat. According to Dolan, the private investigator suggested to the Coast Guard that the boat had been renamed. (Dolan Aff. ¶¶ 13-14.)

According to Markel's Managing Director-Marine, Thomas Conroy, the boat could be insured by Markel only under the terms of its High Performance Boat Program. (Pl.'s Rule 56.1 SOF Ex. C (Conroy Aff.) ¶ 17.) Under that program, policies issued by Markel's agents, such as Sea to Sea, were subject to the provisions of the Markel Marine Insurance High Performance Boat Manual. According to the Manual, an individual disclosed as the primary operator of a vessel must possess at least two years of prior ownership experience in order for an underwriting agent such as Sea to Sea to issue a Markel policy on its own authority. (*Id*. at ¶ 18.) Where less than two years of experience is disclosed, the Manual requires that the application be reviewed by Markel's own in-house marine underwriters. (*Id*.) Conroy further stated that Dolan lacked the minimum level of experience in the ownership and operation of similar vessels which was a prerequisite to the issuance of a Markel policy. Even were a policy issued, it would be subject to a substantially higher premium. According to Conroy, Markel would have refused to issue a policy at all to Dolan had he listed his actual experience on the 2008 application, because he had no experience whatsoever in watercraft ownership and operation, and issuing a policy for a 46-foot Cigarette Rough Rider to someone with a complete lack of such experience would present an unacceptable risk. (*Id*. at ¶¶ 19-22.)

Page 7 of the Markel Marine Insurance High Performance Boat Manual states: "SUBMIT ANY RISK WHEN WATERCRAFT AND EQUIPMENT COVERAGE IS REQUESTED: . . . Owner has < two years ownership experience with a like kind and

9

quality boat." (Pl.'s Rule 56.1 SOF Ex O (Markel Manual) 7, ECF No. 100-15.) Below, it states:

> All operators must be disclosed with their experience listed in the system. This information is used for eligibility and rating. We require two years of ownership experience to be a primary operator on a similar boat, otherwise submit to [Markel] for review. It is important for us to know that experience was gained through ownership, not just operation.

(*Id.*)

Defendants dispute that Markel would not have issued Dolan a policy had he disclosed his lack of experience. As support, they cite the report of Alan Jervis, who has experience in the marine insurance industry. Jervis states that, in his opinion, Dolan's failure to disclose that Dugo would be the operator of the vessel would not be material to a prudent underwriter, because the actual operator did have the experience matching Markel's criteria. Jervis further states that a prudent underwriter would not consider the omission material because the vehicle was not being operated at the time of the loss, that Markel failed to investigate inconsistencies in the applications, and that Markel did not bring the provision regarding non-disclosure or misrepresentation to the insured's attention. Jervis also found Markel's denial letter to be "vague and not in accordance with marine usage, custom and practice." (*See* Defs.' Resp. to Mot. for Summ. J. Ex. A (Jervis Report) ¶¶ 6, 7, 13, 16.) Defendants also cite Thomas Conroy's deposition testimony, which states that someone with the experience contained on the application, had it all been true, would have had acceptable ownership experience, and that the combination of an experienced operator and an inexperienced owner could present an acceptable risk. (Defs.' Resp. to Mot. for Summ. J. Ex. D (Conroy Dep.) 118:10-12, 151:5-15.)

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is called for when the nonmoving party is unable to establish the existence of an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

## III. ANALYSIS

Markel argues that it is entitled to an award of summary judgment with respect to any and all claims made by Dolan under Markel's Policy No. MHP00000014926 because 1) Dolan misrepresented facts on the 2008 application that were material to Markel's decision to issue a policy of marine insurance, 2) Dolan knowingly and intentionally misrepresented facts on his application, and 3) the vessel insured was not involved in any sudden and accidental direct physical loss, as required for coverage to apply under the terms of the policy. Markel further argues that it is entitled to summary judgment with respect to any claims by Regions because Regions was a simple loss payee under the policy and cannot bring a claim where the policy is void in its entirety.

### A. The Doctrine of *Uberrimae Fidei*

The undisputed facts in this case show that the 2008 application contained statements that were false. Dolan was listed as the operator of the boat, and he did not have the experience listed on the application under "Operator Information." Dugo was

the actual operator of the boat, and his name was not listed on the application. The parties dispute whether these misrepresentations were material and whether they were made knowingly.

Before addressing those questions, however, the court must decide whether a marine insurance contract in Illinois is governed by Illinois insurance law or federal maritime law. Marine insurance contracts fall under federal admiralty jurisdiction. *St. Paul Ins. Co. of Ill. v. Great Lakes Turnings, Ltd.*, 829 F. Supp. 982, 984 (N.D. Ill. 1993). Markel argues that the federal doctrine of *uberrimae fidei*, or "utmost good faith," applies to marine insurance disputes. Under the doctrine, an insured must disclose to the underwriter "all facts material to an insurance risk," or the insurance contract is rendered void. *AGF Marine Aviation & Transp. v. Cassin*, 544 F.3d 255, 257 (3rd Cir. 2008).

Defendants argue that state insurance law, not the federal doctrine, should apply to this action. The Supreme Court has recognized that state codes regulating marine insurance contracts may apply to a marine insurance dispute, notwithstanding the federal nature of admiralty law. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1955) (applying state rather than federal admiralty law to question of effect of a breach of warranty on a policy of insurance for a recreational houseboat). In *Wilburn Boat*, the Court explained that, while state law cannot override federal admiralty law, state law controls where there is no "established admiralty rule." *Id.* at 314.

At least one court in this district has applied the doctrine of *uberrimae fidei* to a marine insurance dispute, reasoning that federal admiralty law applies "unless the local interest in the controversy materially exceeds the federal marine concerns." *St. Paul*, 829 F. Supp. at 984. That court found that Illinois did not have a great interest in an action

involving insurance for vessels used in ocean-going charters, in part because section 5/154 of the Illinois Insurance Code, which governs the effect of a misrepresentation, explicitly states that it does not apply to marine insurance policies. *Id.* at 985; 215 Ill. Comp. Stat. 5/154. In the *St. Paul* case, furthermore, the insured was engaged in a business involving international and commercial matters, where federal concerns were heightened. *Id.* at 988.

*St. Paul* was distinguished, however, by a Wisconsin district court which applied Wisconsin insurance law to an insurance dispute involving a recreational boat damaged on an inland lake. That court declined to apply the federal doctrine where the facts were highly localized, where Wisconsin had not exempted boat insurance from its insurance laws, and where the state insurance law was more consistent than the federal doctrine with the insurance contract entered into by the parties. *Progressive N. Ins. Co. v. Bachmann*, 314 F. Supp. 820, 829 (W.D. Wis. 2004).

Here, for several reasons, *St. Paul* is the more applicable case, and the court will apply the doctrine of *uberimmae fidei*. As the *St. Paul* court noted, Illinois exempts marine disputes from the section of the state insurance statute governing misrepresentations in insurance applications. The language of Markel's insurance policy is also consistent with the federal doctrine, as it states that the policy is void if the insured either misrepresents a fact intentionally or misrepresents "any material fact regardless of intent." And, although the vessel in question is not an ocean-going vessel, the facts here are not purely local. The boat was transported from Florida to Illinois, and the insurance policy stated that the Navigation Limits permitted under the policy were "The Great Lakes including the St. Lawrence River, not east of Quebec City, and inland lakes, rivers

and tributaries of bordering states." Furthermore, although the Seventh Circuit has not addressed whether the federal admiralty doctrine applies to marine insurance policies in Illinois, most other circuits have applied the doctrine to such contracts. *See, e.g.*, *AGF Marine*, 544 F.3d at 263 ("[T]he doctrine of *uberrimae fidei* is well entrenched."); *Certain Underwriters at Lloyds, London v. Inlet Fisheries Inc.*, 518 F.3d 645, 654 (9th Cir. 2008) ("Following the framework of *Wilburn Boat*, we hold that the longstanding federal maritime doctrine of *uberrimae fidei*, rather than state law, applies to marine insurance contracts."); *HIH Marine Servs., Inc. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986); *but see Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 889 (5th Cir. 1991) (concluding that the doctrine is not "entrenched federal precedent" and applying state law).

The court notes, however, that the result here would be no different were the court to apply Illinois insurance law. Section 154 of the Illinois Insurance Code sets forth criteria that must be met before an insurer can rescind a policy based upon a misrepresentation by an insured:

> No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance . . . shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.

215 Ill. Comp. Stat. 5/154. Under Illinois insurance law, if Dolan made a misrepresentation in the written application for the policy that materially affected the acceptance of the risk by Markel, that would be a basis to "defeat or avoid" the policy. *See Ill. St. Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co.*, 821 N.E.2d 706, 712 (Ill. App. Ct.

14

2004). "Under the statute, . . . a misrepresentation, even if innocently made, can serve as the basis to void a policy." *Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1015 (Ill. 2003). Thus, Illinois law differs little from federal admiralty law in this respect.

Under Illinois law, Defendants could assert a defense of estoppel or waiver to the rescission of the policy, defenses not available under the federal doctrine. *See Certain Underwriters at Lloyds, London v. Giroire*, 27 F. Supp. 2d 1306, 1312 (S.D. Fla. 1998) (because breach of duty of utmost good faith voids policy *ab initio*, an insured may not raise affirmative defense of waiver or estoppel where there has been material misrepresentation). For example, under Illinois law, the right to rescind a contract is waivable, and Markel would have needed to act "promptly" to rescind the contract after learning of the fraud. *Ill. St. Bar Ass'n*, 821 N.E.2d at 713-14.

There is no indication here, however, that Defendants can raise such a defense. Although Defendants argue that summary judgment must be denied under Illinois law because Dolan's misrepresentations were not material to Markel's acceptance of risk, they offer no defense to the rescission of the policy. Moreover, Markel did not waive its right to rescind the policy. The policy was issued on November 14, 2008, and Dolan filed a claim in March 2009. Markel promptly filed this action for a declaratory judgment on July 23, 2009. Markel thus "did exactly what courts have said insurers must do if they want to preserve their right to deny coverage." *Id.* at 718 (noting that insurer had properly sought a declaratory judgment that it owed no duty to the insured).

**B. Misrepresentations in the 2008 Application**

Having determined that the doctrine of *uberimmae fidei* applies, the court now turns to whether Dolan made a misrepresentation rendering Markel's Policy No.

15

MHP00000014926 void. Markel argues that the policy is rendered void if Dolan either made a representation that was material to a marine risk, or intentionally misrepresented a fact, regardless of the fact's materiality. The court first considers whether Dolan's misrepresentations on the 2008 application were material to the risk assumed by Markel.

The 2008 application specifically asked for the primary boat operator's experience in owning and operating other vessels. Markel has presented evidence that, under its High Performance Boat Program, Sea to Sea, acting as Markel's agent, could not have issued Dolan a policy had he correctly stated his actual experience in boat operation and ownership. Markel's Manual states:

> All operators must be disclosed with their experience listed in the system. This information is used for eligibility and rating. We require two years of ownership experience to be a primary operator on a similar boat, otherwise submit to [Markel] for review. It is important for us to know that experience was gained through ownership, not just operation.

In response, Defendants present the report of their expert, Mr. Jervis, who contends that the misstatements were not material because Markel would have issued a policy to someone with *Dugo*'s ownership and operator experience. Thomas Conroy also stated in his deposition that Dugo's experience would have satisfied Markel's requirements. But whether Dugo might have been able to obtain insurance is irrelevant to whether Dolan's statements were material. Dugo's name did not appear on the 2008 application, and Markel was not asked to issue him an insurance policy. The policy was issued to Dolan. The deposition testimony of Conroy and the expert report of Jervis do not contradict Markel's statements that issuing a policy to someone like Dolan, who had no experience in owning and operating a high speed boat, was against the procedure set out in Markel's

Manual. At the very least, an application by someone with no prior experience had to be referred to Markel's own in-house underwriters for review.

Given that Markel demanded information about operator experience on the 2008 application, and given that its own manual established that the information was important to Markel's assessment of insurance risk, the court concludes that no reasonable trier of fact could find that Dolan's misstatements on the 2008 application were not material. It appears obvious to the court that the experience of the operator of a high performance boat is material to the risks assumed by the boat's insurer.

Under the doctrine of *uberimmae fidei*, because Dolan made misrepresentations on the 2008 application regarding his prior experience in boat operation and ownership that was material to the underwriting decision, Markel's Policy No. MHP00000014926 is void. Because the court holds that the policy is rendered void by Dolan's material misrepresentations, the court does not address whether the undisputed facts establish that Dolan intentionally made false statements on the 2008 application. Nor does it address Markel's alternative argument that the loss of the boat was not "accidental" under the terms of the policy.

**C. Regions's Right to Recover under the Policy**

Markel argues that, because Regions was named in Markel's Policy No. MHP00000014926 as a simple loss payee, Regions may assert no claim under the policy because it is void in its entirety. The court agrees. Illinois courts have held that, generally, "a loss payee's rights are subject to every act or omission of the insured which would prevent the insured from collecting under the policy. *Posner v. Firemen's Ins. Co.*, 199 N.E.2d 44, 48 (Ill. App. Ct. 1964). Here, the court finds nothing that suggests

that Regions may be protected independently by the policy. The policy refers to Regions only as a "loss payee." No separate contract existed between Regions and Markel, and Dolan, not Regions, paid the insurance premium. *Cf. West Bend Mut. Ins. Co. v. Salemi*, 511 N.E.2d 785, 788 (Ill. App. Ct. 1987) (inclusion of loss payee as an insured party indicated that loss payee had a right to insurance proceeds); *Suburban, Inc. v. Cinncinnati Ins. Co.*, 751 N.E.2d 601, 605-06 (Ill. App. Ct. 2001) (explaining that when a party contracts for insurance and pays the premium, it has a right to action "despite the fact that the insurance is in the name of another"). The plain language of the policy, moreover, contains an exclusion stating that "the 'Loss Payee's' interest will not be protected in the event of fraud, misrepresentation, material omission, or willful or intentional misconduct or criminal act on the part of any insured." The court has already found that Dolan made misrepresentations and material omissions on the 2008 application, making the exclusion applicable under the circumstances here. Consequently, the court concludes that no genuine issue of fact exists as to Region's status under the policy, and that Regions has no enforceable claim against Markel.

**D. Coverage of the Trailer**

Defendants argue that, even if Markel's Policy No. MHP00000014926 provides no coverage for the boat, the loss of the trailer is nonetheless covered. The court finds, however, that only one insurance policy covered both the boat and the trailer. The court finds nothing in the language of the policy indicating that coverage is maintained on the trailer when the policy itself is void. Rather, the policy states, "All insurance provided by this policy will be null and void if you . . . misrepresent or conceal any material fact

regardless of intent." As the insurance policy was rendered void in its entirety by Dolan's misrepresentations on the 2008 application, coverage of the trailer is also void.

## IV. CONCLUSION

Because no dispute as to any material fact exists regarding whether Dolan misrepresented facts material to Markel's decision to issue a policy of marine insurance, Markel is entitled to a declaratory judgment that Policy No. MHP00000014926 does not cover the loss of Dolan's boat. Nor is Markel liable for any claim under the policy brought by Regions. The court therefore grants Markel's motion for summary judgment.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 26, 2012